Good morning, Your Honor. May it please the Court, my name is Mark Haines, and I represent Simon Rodriguez, the Chapter 7 Bankruptcy Trustee for United Western Bank Corporation Incorporated, which I'll refer to as UWBI. This case concerns the ownership under Section 541 of the Bankruptcy Code of an IRS refund paid to UWBI, which is a bank holding company, in the amount of $4 million approximately. This refund was mostly, but not solely, attributable to losses generated by United Western Bank, a subsidiary of UWBI, which I will refer to as the bank. The bank was seized by the FDIC and placed in receivership. UWBI filed a Chapter 11 bankruptcy petition that was later converted to a Chapter 7, and my client, Simon Rodriguez, was appointed Chapter 7 trustee. Accordingly, the issue before the Court is whether the refund is property of the estate pursuant to Bankruptcy Code Section 541. As is typical of bank holding companies, UWBI and its subsidiaries entered into a tax allocation agreement, which I will refer to as the TAA, a copy of which is attached as Exhibit A to our opening brief. This authorizes UWBI to file one consolidated tax return for the holding company and its 13 affiliates. Under the unambiguous terms of the TAA, the estate owns both legal and equitable title to the refund. The TAA allows UWBI... legal and equitable title? Yes, Your Honor. Under Section 541, 541A, property of the estate includes all legal or equitable interests of the debtor in property as of the commencement of the case. Legal or. And so I was asking if the bankruptcy court found both legal and equitable title? Correct, Your Honor. An exception to 541A is 541D. Property of the estate does not include an equitable interest in property that the debtor does not hold. The definition is equitable title is a title that indicates a beneficial interest in property and that gives the holder the right to acquire formal legal title. That's from the Regala v. Gardner Tenth Circuit case. And the bankruptcy court held, and we maintain is correct, is that there is nothing in the TAA that confers an equitable title on the FDIC such that it could acquire the right to formal legal title. What's the strongest language in the TAA that provides equitable title to your client? According to the district court in the FDIC, Your Honor, it is the language of Section A-2, which sums up the policy of the TAA. In essence, this agreement requires that each first-tier subsidiary be treated as a separate taxpayer with UWBI being merely an intermediary between an affiliate and the Internal Revenue Service. That is the language that both district court and the FDIC focus on. Essentially treating the word intermediary as a synonym for a common law agent. Well, I must have asked, I was asking actually the opposite question. What's the strongest language here for you in the TAA? Subsection A-1. Okay. All right. I got it. Which actually sets forth the rule. A-2 is a policy declaration. Okay. So intermediary equals agent. According to the district court in the FDIC, intermediary is synonymous with agent. I would it means many other things. For example, in my world, I encounter intermediaries frequently when I do alternative dispute resolution and deal with mediators who are intermediaries and go-betweens, to use the words of the district court and FDIC. But by no stretch of the imagination are those mediators any agent of any party to the mediation. So intermediary is a very broad term. It does not mean agent. Under Colorado law, to create an agency, agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control. That's the Spurton v. Beneficial Finance case, which quotes Restatement of Agency, Section 1. And of course, we are governed by Colorado law here on this question before us, right? Yes, Your Honor. 541 overlays state law on the question. And then, so I'm sort of puzzled by why the emphasis on IndyMac in this case. It seems to me that court is buying what, California law? I mean, it seems to me that the district court has some pretty, I think, reasonable points of critique regarding the IndyMac rubric. So who cares what IndyMac says? I mean, shouldn't we be looking at Colorado law to determine this question? The IndyMac factors have been applied outside California. And with respect, I don't believe they simply declare California law. They rely on general principles of common law as espoused in the Restatement of Trusts and the Restatement of Agency that have been applied generally throughout the 50 states. And just to circle back to the agency issue, again, there is nothing in this agreement that subjects UWBI to the control of the bank or any other affiliates. In fact, referring back to the TAA in the appointment of UWBI, it says, to file such consolidated federal income tax returns for the group as UWBI may elect to file. Under this contract, UWBI And what section are you reading there? G1, Your Honor. UWBI isn't even required to file a consolidated return. UWBI could announce for this tax year, we're not filing a consolidated return. Each of you affiliates will need to file your own. There was no obligation under this agreement to file the request for refund, which again, to me, is virtually dispositive of the property issue. If UWBI has discretion whether or not to file the application for refund, how could the bank have a property interest in something that by UWBI's discretion may never even come into existence? And it certainly undermines the idea that there is an agency-related relationship present. But, Your Honor, I do think the INDIMAC factors are helpful in trying to sift the issue of whether a contract creates a formal agency or trust arrangement versus a typical commercial contract creating debtor-creditor relationships, which certainly is more common. We would look at the issue of commingling. Under this TAA, when the tax refund is paid, if UWBI had not been in bankruptcy, it could have spent that money for anything it wanted. It could have acquired an asset. It could have paid a liability. And then when the deadline in the contract came up to distribute that refund to the affiliates in accordance with the contract formula, it could have drawn on other resources. It could have drawn on a line of credit, maybe a different account. There is a right of commingling, which is contrary again to the idea that there is a property interest. But under your view, the TAA creates essentially a debtor-creditor relationship between the bank as creditor and the holding company, right? That is correct, Your Honor. Well, I mean, and that's — wouldn't that normally have indicia such as an interest rate associated with the money if it is, in fact, a debtor-creditor relationship? With respect, Your Honor, I would say no. I've seen and litigated many, many commercial contracts where there is no interest rate stated or default interest rate stated. And the fact that this agreement was entered into among the members of a consolidated group where they are all related entities, I don't find it surprising at all that an interest rate was not stated. Well, on your commingling point, you say they could pay — they could do whatever they wanted with the money once they received the refund. But then you add that they would have to pay the bank what was owed it, and it could  Correct, Your Honor. Doesn't that indicate the bank has some interest in the money? Well, absolutely, Your Honor. Otherwise, why pay them anything? But that interest is no greater than the interest of any other unsecured creditor of this estate. Virtually all of those relationships were entered into under the expectation that those creditors would be paid. But what has happened in this case, as in almost all bankruptcy cases, is the intervention of insolvency in the filing of a bankruptcy petition because there isn't enough money to pay all the unsecured creditors. And Congress has set forth a carefully constructed set of rules in the Bankruptcy Code as to how you deal with that situation. And we respectfully submit what the FDIC is attempting to get this Court to do is to create a non-code case law preference for itself over and above the other unsecured creditors. Well, what do we do with the — is it Bob Richards, the Bob Richards rule? What do we do with that? I mean, that comes into play, and it's been used by courts many times across the country. It has been, Your Honor. Although — well, there is an interesting side issue as to whether that's California law, and if you apply it outside of California, whether you are creating a rule of Federal common law. But setting that aside, the Bob Richards case was a case where the subsidiary was in bankruptcy, not the parent. So the parent did not present the 541 issue that we have. And what the Court there held is that the parties can enter into a formal agreement — parties, that is, members of a consolidated group can enter into a formal agreement that allocates how matters of tax payment and tax refund are going to be allocated among the group. But absent an agreement, they created a rule that the refund would go to whatever subsidiary generated that or a portion of the refund. But by its terms, it doesn't apply in cases like we have here. Because of the agreement. Because of the agreement. So your position rises and falls on the agreement. If you do not have rights under that agreement, we're done, right? And we would fall back to the Bob Richards default rule. We'd have to examine the issue under Colorado law, I would submit. But yes, Your Honor. I think that's — the reason Bob Richards doesn't apply is that we do have the written agreement before us. And that's how other courts have distinguished Bob Richards. And that also applies to the Tenth Circuit Barnes case, which applied the Bob Richards rule. And in that case, neither party was in bankruptcy. So there was no issue of estate ownership of funds at all in Barnes. Another indicator that we have a debtor-creditor relationship is that the TAA has no ex pro segregation or use restrictions. If we look at the additional terms of the agreement, refunds are kept. The refunds to affiliates generally shall not exceed the amount claimed or received as an IRS tax refund resulting from a carryback claim filed by UWBI. Again, we're talking about a situation where what is received from the IRS may be different than what the agreement requires be paid to an affiliate. Which again, I think, acknowledges that we're dealing here with a debtor-creditor relationship and not a trust or agency relationship. And with respect, Your Honor, I would like to reserve the balance of my time. Thank you. Good morning, Your Honors.  And may it please the Court. I am Joseph Brooks from the FDIC's Appellate Litigation Unit. This appeal can be easily resolved in either one of two ways. First, you can simply apply the Bob Richards default rule, which this Court adopted in Barnes v. Harris, because the TAA is silent on the issue of who owns IRS tax refunds. Or alternatively, you can simply apply the TAA's ambiguity resolving provision, because the TAA is at least ambiguous concerning whether it confirms or creates an agency relationship with respect to IRS tax refunds. Either way, you should hold, as the District Court did, that the tax refunded issue in the case is subject to the FDIC. Why does silence equal ambiguity? I mean, the fact that it doesn't specifically address this question doesn't mean that you can't glean from the terms of the TAA what should happen in this situation. I would beg to disagree, Your Honor, and here's why. The Bob Richards rule is a default rule. And in the subsequent case of IndyMac, as the Court of Appeals pointed out, there's only two ways to dislodge an existing recognized default rule. The Court said, quote, this may be done through an explicit agreement or an agreement implied by the party's past practices, unquote. Now, it's never been suggested by anybody that there are any past practices here that would support an implied agreement. So there cannot be an implied agreement. And on the issue of an explicit agreement, Your Honor, there is an admission in the record that there is no explicit agreement that deals with ownership. And I would direct the Court's attention, if I could, to the transcript of the argument before the Bankruptcy Court. It appears at A262. And the specific discussion appears at A273. And this is the court in a colloquy with counsel for the trustee. At line 16 on A273. So the TAA, you acknowledge that it doesn't expressly, explicitly, specifically deal with ownership of the tax refund. Do you acknowledge that? A brief colloquy between the Court and Mr. Haynes. And Mr. Haynes says, quote, I agree with that. Now, later there was an attempt to try to say, well, not explicit but implicit. Here's the colloquy. It appears at page 274. The Court, I've read the TAA and it just doesn't say anything about who owns the tax refund. Why should I not find that, Mr. Haynes? Well, it's certainly implicit in the agreement, unquote. Well, implicit doesn't do it, as the Ninth Circuit said in the IndyMac case. And why do I care what the Ninth Circuit says? We're applying Colorado law. I don't care what the Ninth Circuit says. Well, Your Honor, you should care what the Tenth Circuit says. I do. In Lawrence v. Harris, the Tenth Circuit says that the Bob Richards default rule is the law. Yes, but it did not give that gloss onto it that you found in IndyMac, did it? Well, Your Honor, IndyMac is also perfectly consistent with the Ampson case in the Sixth Circuit. And both of those cases say something that I think is just sort of my obvious point of law, and that's this. An agreement that does not address the issue covered by the default rule is no different from no agreement. If you have an agreement that covers matters outside of the default rule that would otherwise apply, the default rule stays in place. And here's why that is the law, as both Ampson and IndyMac said. That is the law because default rules are established rules that sophisticated businessmen are well aware of. And when sophisticated businessmen, such as put together at Diefenbach like this TAA, have all kinds of specific provisions in there about all manner of things, and they say nothing, not word one, about a critical issue that's covered by a default rule, the courts have said, most recently the Supreme Court said it in a case that's discussed in the FBOC decision. They said a default rule is not dislodged by an agreement on another issue. So unless this TAA explicitly addresses who owns this tax refund, the Bob Richards rule adopted by this Court in Barnes v. Harris would apply. And beyond that, Your Honor, as in the NetBank case, whether you apply the Bob Richards rule or you instead go to the TAA, the result will be the same. And here's why. The TAA has an ambiguity resolving provision that says at H-4, in the event that there is an ambiguity in this agreement, the ambiguity is to be resolved in favor of an insured financial institution. Here the bank. Again, that's section H-4. Now, of course, if the TAA is silent, that in and of itself is sufficient to trigger the ambiguity resolving position. And relying on what for that? Well, again, I rely specifically on the Amfin case, Your Honor, and specifically on footnote one in the Amfin case, where the Court expressly rejected an argument by the appellee in that case that the failure of the FDIC to argue that the TAA there was ambiguous meant that the TAA had the control. And the Amfin Court said no, perhaps they didn't say ambiguous, but they did say silent. And because the TAA there was silent, the Amfin Court said we have to go outside the tax-sharing agreement. Now, interestingly enough, what the Court then said was, okay, we're going outside. Do we apply the Bob Richards rule? The Sixth Circuit ultimately said no, not because the Bob Richards rule by its own terms wasn't applicable, but because the Sixth Circuit believed that Bob Richards would be Federal common law, and that was not an appropriate place for Federal common law. So they said State law would govern. Now, here, the Tenth Circuit has adopted the Bob Richards default rule. The Tenth Circuit was made aware, as the district court points out here in its decision, of the Federal common law issue that had been raised in many cases against applying the Bob Richards rule. As a matter of fact, it was specifically raised in the reply brief in that case, as noted by the district court in this case, and the Amfin case was specifically discussed. Notwithstanding that, this Court adopted and applied the Bob Richards rule. That part of its decision in Barnes was necessary to its decision, and that is the law of this circuit. So here, if this Court agrees with both parties below, that the TAA does not explicitly address ownership, the Bob Richards rule is automatic. Similarly ---- Kagan. Your opposing counsel is saying that Barnes really doesn't apply here because Barnes arose in a different context than our case. Well, I heard what he said. He said in that case, instead of ---- It doesn't matter what he said? Instead of the parent being in bankruptcy, he said there the subsidiary was. It doesn't change anything. The issue is precisely the same, and that's this. When the IRS, who would send a tax refund directly to whatever party in the consolidated group, okay, is entitled to it. That's what they would want, and that's what would happen. There's only one reason why that doesn't happen, and that's because for its own convenience, the IRS has adopted a rule that says, look, we're not going to deal with all the various members of a consolidated group. We're going to deal with one. But what Bob Richards ---- So they send the refund to the entity that sent in the tax return. That's right. That's right. Well, the IRS says we're going to send the refund to the parent, and Bob Richards says, notwithstanding that procedural device, that refund belongs to the group member or members whose losses and earnings generated the refund, unless the parties explicitly agree otherwise, which they haven't done. Beyond Bob Richards, however, and beyond the silence argument as to why the ambiguity resolving provision of the TAA applies here, there are multiple provisions of the ---- multiple provisions of the TAA that reasonably can be read to confirm or create an agency relationship. Section A2, which was pointed out by my brother counsel, is particularly apt. It says, in essence, in other words, what this agreement is about. This agreement requires that each first-year subsidiary, of which the bank is one, be treated as a separate taxpayer with UBI, the holding company, merely being an intermediary between an affiliate and the Internal Revenue Service, unquote. Merely an intermediary. That's precisely the role that the holding company would play in the absence of this TAA. But that's not the only provision, Your Honor. If you go to, Your Honors, if you go to Section G, and I'm going to read the pertinent language because it's a very long passage, but it says, each affiliate hereby appoints UBI, the parent as its agent, for the purpose of filing consolidated federal income tax returns for the UWBI group as UWBI elects to file, or, and this is the critical passage, or taking any action in connection therewith on behalf of the affiliates. Plainly receiving a refund check in connection with that consolidated return is any action. So you have those two provisions. Beyond that, Your Honors, this entire tax allocation agreement evidences concerns about insured financial institutions, that they should be treated exactly, exactly as if they had filed a standalone return. The question was asked when my brother was up here, well, what would happen, you know, under this one provision if no consolidated return was filed? They wouldn't have an obligation to pay the tax refund? Of course not, because the IRS would pay it directly. And the intention of this mere intermediary language is to continue that same relationship. Now, the Bankruptcy Court said, well, we understand your argument, FDIC. This is right in the opinion. But they said, we interpret intermediary in a more benign and limited fashion. Well, I don't know what that means. I suspect that might be a permissible interpretation. But it does not make the FDIC's interpretation unreasonable. In light of the purpose of this agreement, it is just not reasonable to conclude that the parties would have addressed each of these intricate aspects of the relationship between the bank and the holding company, that they would protect the bank against getting less than it would get on a return, that they would protect the bank under C-5 from ever having to pay monies more than it was required to pay. They would have an ambiguity resolvement provision in favor of the bank and other provisions here. But then they would also decide that as a condition of entering into this agreement, the bank is giving up its ownership and potentially tens of millions of dollars of IRX tax refunds, and they don't say a word about it. That's not reasonable. But even if the Court were to accept that. Well, what do you mean the bank's giving up ownership? I mean, the bank is never – nobody's saying the bank didn't have a right to get paid. The question is whether they had an interest in that specific refund. I mean, that's a distinct thing. I mean, there's no doubt that there would have been some allocation to the bank ultimately if absent bankruptcy, but that's – so that's not the same thing. Your Honor, there's no doubt that there would have been total allocation to the bank. And the reason for that is, is because the bankruptcy court made the following finding. Quote, the tax refund indisputably stems from the bank's business loss carrybacks, unquote. That's at page 1. And if there's any doubt that that might not be, like, totally clear, here's what the bank said at page 7 on the same issue. Quote, based upon the bank's 2010 net operating losses, the affiliated group filed a tax refund request for $4 million plus to recover a portion of the taxes paid by the bank on its 2008 taxable income. And if it's not clear, the Court goes on. In other words, the affiliated group sought a loss carryback tax refund in offset of the bank's 2010 net operating losses against the bank's 2008 income, unquote. In other words, Your Honor, this is not some commingled group of funds that was being sent off. Not that that would make a difference anyway. Why wouldn't it make a difference? I mean, if there – the point is, if the issue is that you're entitled to that specific money, if there's nothing in the TAA that doesn't keep them from commingling that money and moving that money around, just as long as you get paid, as long as you get the money that's owed you, it doesn't – there's nothing in the TAA that says it has to be that specific money. Well, there is, Your Honor, and again, it's G-1, the provision that I just wrote. I'm looking at G-1. G-1, which makes the holding company the agent for the bank when it receives that tax refund. And the question, though, that begs the question of what agent means. And that's why we're looking at Colorado law to try to figure out what agents mean. And an agent has some obligation to report to the principal, does it not? And in this context, that's not the case. The holding company can essentially distribute the money as it sees fit, as long as you get paid. I don't believe that's correct, Your Honor. And the case that we relied on is, again, a case from this Court, the Phillips Petroleum case. And that case, which is not only – am I going to read the quote? This exact quote appears in our brief. And this is the law, Colorado Law and Agency. Quote, the authority of an agent may be as broad as the principal chooses to make it, may grant power to the agent to exercise his judgment and broad discretion, and may vest in the agent the authority to do for his principal any lawful act performed by the principal, unquote. The trustee does not mention this case in its reply brief, and the silence is deafening, because it makes clear that this control argument is no argument at all, at least not under Colorado Law. This agreement appoints the holding company as the agent, in the words of G1, to take any action in connection with this tax refund. And when it received this tax refund, it was receiving it as an agent, it had the responsibilities of an agent, and those responsibilities included protecting those funds and keeping them for its principal. Thank you. Thank you for your time, Your Honor. Thank you, Your Honor. Your Honor, the closest this agreement comes to talking about ownership is in A1, where the reciprocal duties of each party are laid out. Each affiliate shall pay UWBI an amount equal to the federal income tax liability such affiliate would have incurred if it filed separately. And reciprocally, any refund shall occur as a net operating loss or excess tax credits. The regulated affiliate is entitled to a refund equal to the amount it would have been entitled to receive had it filed separately. It doesn't say, and by the way, it owns those funds. Well, how do you respond to the argument that G clearly says that your client receives the refund as agent for the bank? The agency is in G1. And the reason the word agent is in there is that the IRS regulation specifies that a holding company appoint one, quote, unquote, agent because the IRS will only deal with one party from a consolidated group. But it doesn't say, the regulation doesn't say that person has to be a common law agent for all the purposes that implies under state law. What the agreement says is that appoints its agent for the purpose of filing such consolidated federal income tax returns for the group as UWBI may elect to file and making any election application or taking action in connection therewith. The bankruptcy court characterized that as a procedural agency to comply with IRS regulations, and we submit that's the correct result. Because the essence of agency under Colorado law is control by the principal. Well, what about the Phillips case, which apparently you didn't respond to, that he just spoke about, the FDIC? With respect, Your Honor, that is not the definitive Colorado case on agency. We have cited in our papers what is the definitive Colorado case on agency, which is the Storchman v. Beneficial Finance case, which says that it's a manifestation of consent by one person to another so that the other shall act on his behalf and subject to his control. If you don't have control, you don't have an agency under Colorado law. Thank you. Your time goes up. Thank you, Your Honor. Extra time. Thank you. Thank you both for your arguments this morning. The case is submitted.